# Stephenson, Appellant, *v.* Dodson.

*Corporations—Officers—Foreign corporations—Registration—Bond—Individual liability of officers.*

The officers of a foreign corporation not registered in Pennsylvania, cannot be held individually liable for money paid for a bond of the corporation, where it appears that although they signed the bond in their official capacity, they did not sell, negotiate or deliver the bond, nor receive the money, and that when the bond left their hands it was without validity because it was not certified by the trustee of the mortgage.

The incorporators and members of a foreign unregistered corporation are not liable as partners for the debts of the corporation.

When the execution of a contract is by written obligation, or sealed covenants, the agent signing it cannot be sued upon the instrument itself, unless there be apt personal, contractual words of his own, or he signs it as his own.

Argued Dec. 5, 1907. Appeal, No. 185, Oct. T., 1907, by plaintiff, from judgment of C. P. Northampton Co., Feb. T., 1906, No. 14, for defendants on case tried by the court without a jury in suit of L. B. Stephenson v. Truman M. Dodson and Josiah Bachman, partners, trading as The Dodson Lead and Zinc Co. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover money paid for a bond of a nonregistered corporation.

SCOTT, P. J., filed the following opinion:

### THE FACTS.

From admissions in the pleadings, and from testimony, where disputed, I find them to be:

1. The plaintiff, above named, is the holder for value of a bond (No. 76), purporting to be the obligation of the "Dodson Lead and Zinc Company," issued at Bethlehem, this county. It is one of a series of 200, each in the sum of $500, dated March 1, 1894, signed by Truman M. Dodson, as president, attested by Josiah Bachman, secretary (these two defendants), and payable "At its office in Bethlehem, Penna., on the first day of March A. D., 1914." The payment of these bonds' was secured by a trust mortgage of the corporation, executed the same day, upon all its real estate, appurtenances and plant equipments in the state of Missouri. Coupons for semiannual payments of interest, on the first day of March and September, were attached to each bond, signed by "Josiah Bachman, Treasurer."

2. The Dodson Lead and Zinc Company is a corporation, created and organized in the state of West Virginia, September 8, 1891, "For the purpose of mining, preparing for market and selling lead, zinc and other mineral in Wright County, Missouri, and elsewhere; and manufacturing and selling the products thereof, and of purchasing lands, and erecting buildings and machinery for the purpose of such mining and manufacture." The incorporators were all citizens of Pennsylvania. It was stipulated in the certificate of incorporation, approved and issued by the secretary of state of West Virginia, that it "Shall keep its principal office or place of business at Bethlehem in the County of Northampton and State of Pennsylvania." It was admitted to do business in the state of Missouri, pursuant to certificate of the secretary of state, dated November 28, 1892. It was not then nor since registered in the state of Pennsylvania, as required by the Act of assembly, April 22. 1874, P. L. 108, relative to foreign corporations.

3. The bonds contain, upon their face, the recital that they are issued in pursuance of the resolution of the board of stockholders, "Held at the principal office of the Company at Bethlehem, Penna.," on January 22, 1894, and of the action of the board of directors of said company, held at the same place February 5, 1894. They contain also the following provision: "Upon default being made in the payment of any coupon or semiannual payment of interest hereon for the period of six months after the same is due, the whole principal sum hereof and interest to said date will become due and collectible upon the request of one or more bondholders holding an amount in the aggregate of Ten Thousand Dollars made to said Trustee, as specified in said Mortgage or Deed of Trust."

No request has been made to the trustee, according to this stipulation. Default has existed in payment of the interest aforesaid, since March 1, 1904, and this suit was instituted December 21, 1905.

4. The money loaned upon the bond now held by plaintiff, and all others of the issue, secured by the mortgage aforesaid, was not loaned to, or received by, either of these defendants individually, nor as agents of the Dodson Lead and Zinc Company. It was borrowed by the company, and applied to the improvement and development of its property in the state of Missouri. Truman M. Dodson signed the bonds, as president, and Josiah Bachman attested them, as secretary, affixing the corporate seal thereto, in compliance with the instructions, and by virtue of the supposed authority, embraced in the resolutions of the meeting of stockholders, and board of directors, specified in the last preceding paragraph, and without any fraudulent purpose or deceit. I cannot find that either of them had any further or personal agency in negotiation of the bonds.

5. The company's property is situated in Missouri, and its capital, from the time of incorporation, invested there. But its funds were deposited here, and the treasurer paid out annually $6,000 for ten years, as interest on its bonds, issued as above mentioned. It maintained at that place a business office, with superintendent, who employed a clerk, in the

city of Mansfield, where accounts were kept in ledger, journal and daybook, and the product of the mines and manufactory sold. The general superintendent was employed by resolution of the board of directors, at a meeting in Bethlehem. He made report of his business affairs at intervals of time, longer or shorter in duration, to the secretary in Pennsylvania, who from them kept accounts of his own. Stock was issued by corporate action at Bethlehem, largely for the property purchased in Missouri, but some of it was sold to subscribers here. Employees were hired and paid at the superintendent's office, but money was borrowed in considerable sums at Bethlehem, upon the company's note, and the proceeds remitted to him for the pay-roll accounts, during the periods of development, and afterwards the machinery was purchased by him, and contracts made therefor, but the directors had set a limitation upon the price. More available assets were required, and the bonds were issued for that purpose by the action of stockholders and directors at Bethlehem, as hereinbefore stated. No corporate or business meeting of the stockholders or directors was ever held in Missouri, or West Virginia, but all of them in Pennsylvania, at the office established at Bethlehem. This office building did not belong to the corporation, but to Dodson and Company, coal dealers, by whom it was used. The secretary was their employee. He kept in his desk there, the corporate seal, stock ledger, transfer books, ledger and daybook of the business affairs at the mines, made up in abbreviated form from the reports of the superintendent. The directors and other officers were all residents of Bethlehem, or near its vicinity; and all the stockholders, with one or perhaps two exceptions, were citizens of Pennsylvania. At the corporate meetings, the company was organized, and by-laws adopted, options accepted, stock issued and subsequently increased; land purchased by assessment of the shares and otherwise; an agent appointed in West Virginia to accept service; debenture bonds were exchanged for the first mortgage bonds; the price of the latter fixed with rebate allowance, and a sinking fund created. The superintendent's authority in Missouri, was subject to that of the stockholders, and his ac-

tion, at different times, was approved. These specific findings are not required to be prefaced by a statement of all the testimony, respecting them, in detail: Eichman, Receiver, *v.* Hersker, 170 Pa. 402. They are based upon the evidence, relating to a period of time prior to or closely contemporaneous with the date of these bonds. That which refers to time subsequent thereto, admitted under objection, is disregarded as irrelevant; the motion to strike it out is allowed, and under the reservation at the trial, it will be considered as again offered, and a bill sealed for the plaintiff. The operations of the company in Missouri ceased in 1898.

If it be a fact, and not a conclusion of law, I further find that the Dodson Lead and Zinc Company was "doing business" in Pennsylvania in January, February and March, 1894.

## CONCLUSIONS OF LAW.

1. The Dodson Lead and Zinc Company, a foreign corporation, was "doing business" generally in Pennsylvania (without registration), at the time the bond in suit was issued; and the issue of which it is one, was part of that business for the purpose expressed in the resolutions by which it was authorized: Steel Tube Co. *v.* Riehl, 9 Pa. Superior Ct. 220.

2. The members of a foreign and unregistered corporation in Pennsylvania are not liable as partners, upon negotiable bonds, issued under the seal of said company.

3. The president and secretary, who affixed the corporate seal to them, and attested it by their signature in these capacities, pursuant to a resolution of stockholders, but did not negotiate the bonds personally, nor receive the money, are not individually responsible for payment to the holders, as agents, without authority from an unknown or unrecognized principal.

*Error assigned* was the judgment of the court.

*George R. Booth* and *H. J. Steele*, for appellant.—The fact that the bond in suit is in form the bond of the Dodson Lead and Zinc Company, a corporation of West Virginia, does not estop the plaintiff from recovering against the defendants: Sheble *v.* Strong, 128 Pa. 315; Eliot *v.* Himrod, 108 Pa. 569; Hopkins *v.*

Mehaffy, 11 S. & R. 126; Swan v. Watertown Fire Ins. Co., 96 Pa. 37; Hagerman v. Empire Slate Co., 97 Pa. 534; Pittsburg Const. Co. v. West Side R. R. Co., 16 Pa. Dist. Rep. 670; Delaware River Quarry, etc., Co. v. Pass. Ry. Co., 204 Pa. 22; List v. Com., 118 Pa. 322; Thorne v. Travelers' Insurance Co., 80 Pa. 15; Silk Mfg. Co. v. Reilly, 187 Pa. 526; West Jersey Ice Mfg. Co. v. Armour & Co., 12 Pa. Superior Ct. 443.

*W. S. Kirkpatrick,* of *Kirkpatrick & Maxwell,* for appellee.— One who deals with a corporation as such cannot impeach its corporate character by showing that conditions precedent to the existence of the corporation had not been complied with: Johnston v. Elizabeth B. & L. Assn., 104 Pa. 394; N. Y., etc., Bank v. Crowell, 177 Pa. 313; Bond v. Stoughton, 26 Pa. Superior Ct. 483.

No action can be maintained against the officers individually: Hopkins v. Mehaffy, 11 S. & R. 126; Hagerman v. Empire Slate Co., 97 Pa. 534; Swan v. Fire Ins. Co., 96 Pa. 37.

OPINION BY ORLADY, J., July 15, 1908:

The plaintiff brought an action in assumpsit to recover from the defendants, jointly and severally, "by reason of their signing, executing, issuing and selling to him a bond, in the sum of $500.00 of the Dobson Lead & Zinc Company; the said defendants assuming to act as officers and agents of said company without lawful authority from it, and in violation of the laws of Pennsylvania, it not being registered in this commonwealth, as required by the Act of Assembly, April 22, 1874, P. L. 108, relating to foreign corporations."

It was agreed by counsel that a trial by jury be dispensed with, and the case was submitted to the court, under the act of 1874. After a full hearing, a judgment was entered in favor of the defendants to which the plaintiff excepted and this appeal was then taken. The trial of the case took a wide range in the court below, as did its argument in this court, and after a careful examination of all the testimony, we fully concur in the findings of fact as determined by the court below, and the conclusions of law based thereon.

The plaintiff is a holder for value, of a bond purporting to

be an obligation of the Dobson Lead & Zinc Company, dated March 1, 1894, signed by Truman M. Dobson, as president, and attested by Joshia Bachman, secretary (the two defendants), and payable at the company's office at Bethlehem, Pennsylvania, on March 1, 1914. The payment of this, and of the other bonds of the series, was secured by a trust mortgage of the corporation, executed the same day, upon all its real estate, appurtenances and plant equipment in the state of Missouri. The conception and consummation of the business of this defendant company was quite out of the ordinary. The company was created and organized in the state of West Virginia on September 1, 1891: "For the purpose of mining, preparing for market and selling lead, zinc and other minerals in Wright County, Missouri, and elsewhere, and manufacturing and selling the products thereof, and of purchasing lands, and erecting buildings and machinery for the purposes of such mining and manufacturing."

The incorporators were all citizens of Pennsylvania, and its certificate of incorporation provided that it "Shall have its principal office or place of business at Bethlehem, in the County of Northampton, and State of Pennsylvania." None of its property was situated in Pennsylvania and its capital was all employed in Missouri, except a small part which was retained to pay the interest on the bonds. Moreover, it was never registered in this state, although the general management of its affairs was conducted at Bethlehem, Pennsylvania.

The court found specifically that the money loaned upon the bond, now held by the plaintiff, was not a loan to, nor received by, either of these two defendants individually, nor as agents of the Dobson Lead & Zinc Company. It was borrowed by the company and applied to the improvement and development of its property in the state of Missouri. The defendants signed the bonds as president and secretary and affixed the corporate seal thereto in compliance with instructions given by virtue of a resolution passed at a regular stockholders' meeting, and by the action of the board of directors pursuant thereto; and neither of the defendants had any further or personal agency in the negotiating of the bonds.

The plaintiff's right to recover must be founded on a contract, either express or implied, and the only question before us is as to his right to recover, in this form of an action, against these defendants as individuals. The court below properly held that the general rule respecting the liability as partners of incorporators and members of foreign unregistered corporations did not prevail in Pennsylvania. There is here, no statute, as exists in some states, which imposes such an absolute individual responsibility. In reaching this conclusion, the learned judge relied for argument and authority on Guckert v. Hacke, 159 Pa. 303; N. Y. Nat. Exchange Bank v. Crowell, 177 Pa. 313; Montgomery v. Forbes, 148 Mass. 249; Merrick v. Van Santvoord, 34 N. Y. 208; Bond v. Stoughton, 26 Pa. Superior Ct. 483, which are to the effect that the defendants would not be liable to the plaintiff as partners merely because they were members of the corporation, nor by reason of their signatory designation as officers of the company, it nowhere appearing, either in the writing or at the time the bond was delivered, that the transaction was or purported to be their personal contract.

When the execution of a contract is by written obligation, or sealed covenants, the agent cannot be sued upon the instrument itself, unless there be apt personal contractual words of his own, or he sign it as his own: Story on Agency (9th ed.), sec. 264, and notes. These essentials are lacking in the case before us, in that there are no personal covenants of the defendants, nor is the instrument sealed by them, but by the corporation, and authenticated only by their signatures as president and secretary, according to the instruction of the stockholders' resolution: Hopkins v. Mehaffy, 11 S. & R. 126. And in these essentials it is therefore clearly distinguishable from Quigley v. DeHaas, 82 Pa. 267; Kroeger v. Pitcairn, 101 Pa. 311, and McConn v. Lady, 10 W. N. C. 493.

It plainly appeared by the uncontradicted testimony that by virtue of their implied agency, as president and secretary, they did not sell, negotiate or deliver the bond, which was without any corporate validity, even if registration of the company in this commonwealth had been effected, for the

reason that it lacked the counter signature of the trustee, which, by the very terms of the bond,—"This bond shall not be valid unless countersigned by the Trustee"—was essential to its validity. Neither did they receive any money, and it does not appear that they had any further relation to it than as official representatives of the company. The rule which holds an agent responsible where he contracts for the benefit of a principal, without having due authority, is founded upon the supposition that the want of such authority, is unknown to the other party: Story on Agency, sec. 265. In the present case the bond carried on its face, the distinct notice that it required the signature of the trustee to give it validity, so that the case is clearly distinguishable, under these facts, from the case of Lasher v. Stimson, 145 Pa. 30. Whenever individual responsibility is imposed by statute upon officials for corporate actions, in excess of power, it is in the nature of a penal provision, and is not to be extended, by construction, to cases not clearly within the law: Chase v. Curtis, 113 U. S. 452.

It is not necessary to a decision of this case, to dispose of the other questions raised, as under the facts found by the court, which are fully supported by the evidence, the defendants neither jointly nor severally held any personal, contractual relation to the plaintiff. There is no direct evidence as to how, nor by whom the bond was delivered, nor to whom the money was paid, nor as to the person or persons who received the money for the bonds; and the court having specifically found that they did not sell, negotiate or deliver the bond, nor receive the money, and that when they left their hands they were without validity, the cause of action falls.

The assignments of error are overruled and the judgment is affirmed.