DAVID L. RAND *vs.* SAMUEL FARQUHAR & others.

Middlesex.    December 12, 1916. — February 27, 1917.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Voluntary Association. Name. Evidence,* Presumptions and burden of proof. *Agency,* Knowledge of limitation of authority. *Practice, Civil,* Exceptions,. Rulings and instructions.

It here was *said* that "The right to adopt a name for business purposes is universally conceded to be the right of individuals, partnerships and corporations," and it was *held* that a like power is possessed by the trustees of a trust or voluntary association created for business purposes.

Where the declaration of trust creating a business voluntary association provided, in regard to its governing board, that "All the powers hereunder may be exercised by a majority of said trustees, that is, by three of them, and all deeds or : other instruments executed by such majority shall be as effectual and binding as if executed by all of the trustees" "and all persons dealing with said trustees

shall look only to the property of the trust for payment of their claims," and where an agreement in writing [under seal with a contractor, by which the association, called the "B Trust," agreed to pay him a certain sum of money for the construction of a building to be known as "B Hall," provided "that the contractor shall look only to the funds and property of the trust for all payments due hereunder and not to the trustees or stockholders of the said B Trust personally," and the instrument was signed, in behalf of the trustees, "Trustees of the B Trust by R G, Pres. A G E, Treas." with a seal affixed opposite each name, and where there was evidence of authorization, of recognition, of adoption and of ratification of this contract by the trustees, it was *held* that it could be found that the signature "Trustees of the B Trust" had been adopted as the name under which the trustees or a majority of them should enter into contracts and execute instruments in furtherance of the business management of the trust and that the contract was duly executed and was a valid contract binding on the association.

In the same case it was *said* that, even if the trustees had attempted and had failed to execute properly such an instrument, which it was within their power to make, they could not be held to have made themselves personally liable contrary to the words and spirit of their undertaking.

In an action on the contract above described brought by the contractor against the trustees as individuals in an attempt to hold them personally liable for an unpaid balance due under the contract, it was *held*, that, if the plaintiff contended that the express provision of the contract against personal liability had been waived by the trustees or had been abrogated otherwise, the burden was upon him to prove the waiver or abrogation.

If a contractor, who has constructed a building for a voluntary association governed by a board of five trustees, makes an agreement in regard to extra work with one of the five trustees, knowing that his authority to act for the board is limited, he is bound to ascertain at his peril the extent of such limitation.

If the presiding judge at the trial of an action at law states that he will give as an instruction to the jury the substance of a certain ruling requested, and the requesting party excepts to his refusal to make the ruling as requested, and if later the judge gives to the jury the instruction referred to and no objection is made to the manner in which he has dealt with the request, the exception must be treated as waived.

No exception lies to the refusal of a presiding judge to instruct the jury as a matter of law on a question depending on conflicting testimony.

CONTRACT to recover a balance of $5,131.21 alleged to be due for work and labor furnished to the defendants in the erection of a building known as Brandon Hall in Brookline. Writ dated February 10, 1908.

In the Superior Court the case was tried before *Fox, J.* The plaintiff and the defendants were members of an association known as the Master Builders' Association, which maintained a meeting place for men engaged in the different trades of building construction. The plaintiff was a builder, the defendant Farquhar a roofer, the defendant Gallagher a plasterer, the defend-

ant Marshall a painter and the defendant Parker a dealer in interior finish. The defendant Eastman was an architect. It appeared that the defendant Eastman had designed a large apartment house and had negotiated for the purchase of the equity in a tract of land in Brookline and with the Massachusetts Title Insurance Company for the placing of a construction loan or second mortgage on the land. The other defendants agreed to act with Eastman, five in all, as trustees under a declaration of trust, which is referred to and in part described in the opinion.

The plaintiff agreed with the defendant trustees to erect the buildings ready for lathing and plastering, with materials largely furnished by other parties, under a contract dated April 8, 1903, which is referred to and in part quoted and described in the opinion. The consideration named in the contract was $13,900, and the contract contained a provision for extras to be furnished only upon the written order of the architect. This contract referred to the declaration of trust and contained a provision that Rand, the plaintiff, should look only to the funds or property of the trust for his compensation and not to the trustees personally.

The plaintiff testified that he was a contractor and knew the defendants who were in the same line of business, that he saw the defendants Eastman and Gallagher in regard to the work, that the work under this contract was substantially finished about July 1, 1903, but that he did not receive his pay according to the terms of the contract, that he did some extra work and that he went to Eastman for orders, that $2,056.57 was the amount of extras, including extra carpenters' labor, re-enforcing posts, extra window frames, storing and putting away inside finish, furring down some parlor ceilings, lowering bathroom floors, setting door frames and tanks, extra mason work on brick piers, culling bricks, labor tending masons when hauling columns, laying twenty thousand bricks in dining room walls, derricks for hoisting girders, and watchman. The plaintiff rendered his bill on August 1, 1904, to Eastman and the latter had this bill approved by himself and the other trustees. The plaintiff testified that he had conversations with Eastman with regard to making a new contract for the interior finish in 1903, and these conversations were admitted in evidence subject to the condition that the plaintiff subsequently would prove Eastman's authority to make a new contract. He testified that

he told Eastman that he did not want to take on any more work
the way the matter stood and that Eastman said the trustees
would furnish more funds and they would have funds, that
later the plaintiff submitted a price on the basis of a contract or
on a commission basis, saying that he would only do it with the
provision against personal liability eliminated in the new contract,
as he was behind about $5,000 in payments on the first contract
and as the trust funds had been practically used up; that East-
man said he did not think the trustees would do it, but later
he told the plaintiff to draw up a contract and the plaintiff drew
up a letter and gave it to Eastman.    The plaintiff further testified
that during the progress of the work Gallagher, Farquhar and
Marshall were at work on Brandon Hall, Farquhar doing the
roofing and metal work, Gallagher the fireproofing and plastering
and Marshall the painting, that he, Rand, talked with them and
discussed the contract in a general way, that he talked with
Gallagher at the Master Builders' Association and that Gallagher
said the trustees had talked over the new work and thought Rand's
figure fair, that Rand then saw Eastman, and Eastman said the
trustees had authorized him to tell Rand to go ahead with the
work.    Rand also testified that he paid one Moriarty for laying
floors; that when the work was done he paid Moriarty the sum of
$800; that afterwards, not being paid his money by the trustees at
the times called for by the agreement, he refused to pay Moriarty
for the balance due on the floor work and that Moriarty sued the
plaintiff; and that as a result of the lawsuit the plaintiff paid
Moriarty $500 more.    The plaintiff testified that he began work
under the new contract about August 1, and that when the entire
work was completed the account between him and the trustees
was as follows:

The amount of the first contract was $13,900 and of extras
$2,056.57, making $15,956.57.    The amount due on the second
contract was $5,747.09, that he paid Moriarty $1,300 and was
entitled to a commission of $677.55, making $7,724.64, so that
the total amount due of the two contracts was $23,681.21.    He
had received from time to time between May 26 and October 29,
1903, fifteen payments amounting in all to $18,550, leaving a bal-
ance due of $5,131.21, for which the action was brought.

He testified further that, as he received the payments, he

applied them on the first contract until enough had been so applied to extinguish the amount due on it; that the balance, $2,593.43, he applied on the second contract and that there still was due on the second contract the above named balance of $5,131.21.

Other material evidence is described in the opinion.

At the close of the evidence the plaintiff asked for certain rulings, among which were the following:

"2. The defendants are personally liable on all contracts made by their co-trustee, Eastman, within the scope or apparent scope of his authority, unless personal liability was particularly excluded.

"3. It was within the apparent scope of Eastman's authority to make the contract to do the finish work without excluding the personal liability of the defendants.

"4. The defendants are personally liable on the contract to do the finish work, unless they exempted themselves from personal liability by an express provision in the contract showing an intention on the part of the party doing the work to exclude the personal liability of the trustees." The judge stated that he would make this ruling in substance, and his instruction as given was not objected to.

"5A. The burden of proof is on the defendants to show that they have exempted themselves from personal liability.

"6. On all the evidence you will find that the contract to do the carpentry labor to finish the building was a new contract and not an extra under the first contract.

"7. The provisions of the first contract are not the provisions of the second contract unless made so particularly by both the contracting parties."

"9. The first contract not being signed in accordance with the requirements of the trust deed did not bind the trusts funds, and therefore the defendants are liable personally on all work done under that contract or any extras thereto."

The judge refused to make any of these rulings, except to give the fourth in substance as an instruction to the jury, as explained above.

At the request of the defendants the judge gave the following instruction to the jury, subject to the plaintiff's exception:

"If the defendants, or a majority of them, authorized the con-

tract of April 8, 1903, with Rand and it was signed by the persons whose signatures it purports to bear, that contract was duly executed and is a valid contract binding on the plaintiff and the defendants."

The jury returned a verdict for the defendants; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*H. C. Dunbar*, for the plaintiff.

*G. L. Mayberry & C. B. Gleason*, for the defendants.

PIERCE, J. April 8, 1903, the plaintiff and the defendants "As Trustees of the Brandon Trust under a declaration of Trust . . . but not individually," signed and sealed an instrument wherein the plaintiff agreed to "perform all the work for the complete erection and construction in every detail ready for lathing and plastering, of the building to be known as Brandon Hall," by July 15, 1903, for the sum of $13,900, to be paid in instalments as the work progressed; and upon the understanding "that the contractor shall look only to the funds and property of the trust for all payments due hereunder and not to the trustees or stockholders of the said Brandon Trust personally." The work, with "extras" to the amount of $2,056.57, was substantially finished July 1, 1903. A statement of the account, with a balance unpaid and overdue of $7,456.57, was rendered to and approved by the trustees August 1, 1903.

The authority of the defendants to make a contract which in equity should charge the funds and property of the trust only, is found in the provision of the declaration of trust which reads, "All the powers hereunder may be exercised by a majority of said Trustees, that is, by three of them, and all deeds or other instruments executed by such majority shall be as effectual and binding as if executed by all of the Trustees" "and all persons dealing with said Trustees shall look only to the property of the trust for payment of their claims." *Hussey* v. *Arnold*, 185 Mass. 202.

The defendants were specifically and severally named in the instrument of agreement, and "as Trustees of the Brandon Trust . . . but not individually" were described as "party of the second part." The instrument was signed and sealed by the plaintiff, and on behalf of the Trustees was signed "Trustees of the Brandon Trust

by Robert Gallagher, Pres. Albert G. Eastman, Treas.," with a seal affixed opposite each name.

The plaintiff contends that the contract, although meant to bind only the trust funds and to exempt the trustees from personal liability, never sprang into being as a valid agreement, because of defective execution, the defect being that it was signed by only two trustees, whereas by the trust declaration it was required to be signed by three trustees, that this was a defect in substance and not merely in form, and that since the contract was under seal no valid ratification of the defective execution could be made by parol by the non-signing trustees.

As a matter of law it does not necessarily follow that the instrument was void because it was not signed and sealed by the individual hand of at least a majority of the trustees. From the fact that all the trustees approved the bill rendered for the work, and from other attendant facts, it could be found that the signature, "Trustees of the Brandon Trust," was adopted as the name of the defendants under which the trustees or a majority of them should enter into contracts and execute instruments in furtherance of the business management of the trust. The right to adopt a name for business purposes is universally conceded to be the right of individuals, partnerships and corporations. *Melledge* v. *Boston Iron Co.* 5 Cush. 158, 173, 176. There is no legal inhibition to the exercise of a like power by the trustees of a trust created for business purposes.

If the associate name was signed and the instrument was sealed without formal authority, it would nevertheless become binding upon the trust as an act of the trustees within the declaration of trust if they or a majority of them expressly or impliedly by parol afterwards adopted it. *Cady* v. *Shepherd*, 11 Pick. 400. *Swan* v. *Stedman*, 4 Met. 548. *Merrifield* v. *Parritt*, 11 Cush. 590. *McIntyre* v. *Park*, 11 Gray, 102. Moreover, it is plain that the defendants could not be held to be personally liable against the words and spirit of their undertaking because they, in pursuance of the business of the trust, had attempted and had failed to execute properly an instrument within their authority to make. *Sumner* v. *Williams*, 8 Mass. 162, 184. *Abbey* v. *Chase*, 6 Cush. 54. *Shoe & Leather National Bank* v. *Dix*, 123 Mass. 148. *King* v. *Stowell*, 211 Mass. 246, 250.

There was evidence of authorization, of recognition, adoption and ratification of the contract under seal of April 8, 1903. It

follows that the ruling, "If the defendants, or a majority of them, authorized the contract of April 8, 1903, with Rand [the plaintiff] and it was signed by the persons whose signatures it purports to bear, that contract was duly executed and is a valid contract binding on the plaintiff and the defendants," was rightly given, and that the exception of the plaintiff must be overruled.

The second request of the plaintiff that "The defendants are personally liable on all contracts made by their co-trustee, Eastman, within the scope or apparent scope of his authority, unless personal liability was particularly excluded," could not have been given rightly. The plaintiff's contract contains the provision "that the contractor shall look only to the funds and property of the trust for all payments due hereunder and not to the Trustees or stockholders of the said Brandon Trust personally." The plaintiff also testified "that he knew he was contracting with the defendants as trustees of the Brandon Trust and that he had read and fully understood that the trustees had not assumed personal liability." The plaintiff had knowledge of the actual authority of the trustees, he therefore could not rely upon implied powers. If the express provision of the contract against personal liability was waived by the trustees, or had been otherwise abrogated, the burden was on the plaintiff to prove the fact. The exception to the refusal to give this request must be overruled.

As a result of negotiations with one of the trustees (Eastman), in regard to the additional labor required to install the interior finish of the building the plaintiff had erected under the contract of April 8, 1903, the plaintiff "drew up" a letter and gave it to Eastman, which reads: "I agree to furnish the carpenters' labor to finish the Brandon Hall . . . in the following manner, I to furnish a general foreman who will keep the workmen's time, including his own, on the pay roll. I agree to pay the said men every Saturday and the Brandon Company are to furnish me the full amount of the pay roll for two weeks on Friday previous to the second week pay day, and in each successive week until the building is finished, for which service by me rendered you hereby agree to pay me twelve per cent. on total above pay roll when carpenter work on the building is finished." The proposals of this letter were accepted by the trustees and the plaintiff furnished the labor to install the interior finish.

There was evidence to support the contention of the plaintiff that it was understood that the provision against personal liability in the original contract should be eliminated; there was also evidence that the plaintiff "agreed to furnish the labor for the erection of the trim on the same basis as the original contract," and "that this work was an extra under the original contract." The additional work was completed as early as December 4, 1903.

The total amount claimed by the plaintiff to be due him under the new contract, including his commission, is $7,724.64. After August 1, 1903, he was paid in instalments the total sum of $10,050. These payments, with the exception of one of $2,000, one of $1,000, and one of $1,500, were approximately the amounts of the pay rolls, and could have been found to have been determined by the amounts needed to meet the pay rolls. The plaintiff testified that as he received the payments he applied them to the balance $7,456.57 due upon the first contract "until it was squared;" that the balance $2,593.43 he applied to the second contract and that there was a balance still due on the second contract of $5,131.21, which is the sum he seeks to recover with interest. He further testified "that he did not understand that what money he drew . . . he could apply only to the pay roll."

In consideration of the terms of the letter and the actions of the plaintiff and the defendants as regards the payments, the issue was fairly presented whether within the fair understanding of the parties the payments were made by the defendants to be applied to the second contract. This issue was properly submitted to the jury, with the instruction "if that was in effect the direction by Mr. Eastman, representing the debtors, the plaintiff had no right to apply those payments to an old debt."

The plaintiff's third request could not have been given rightly, as the plaintiff knew that the co-trustee, Eastman, acted with limited authority, the extent of which the plaintiff was bound to ascertain at his peril.

The judge stated he would give the substance of the fourth request, and as there was no criticism of the manner in which the request was dealt with the exception must be treated as waived.

The fifth request, "The burden of proof is on the defendants to show that they have exempted themselves from personal liability," manifestly could not have been given. Had the plaintiff de-

sired an instruction as to the burden of producing evidence to meet or rebut a presumption or otherwise, the request should have been framed to present the rule of law applicable to such a situation.

The sixth and seventh requests ask for an instruction as a matter of law upon conflicting facts, and were rightly denied.

The ninth request has been fully treated and was rightly denied. The tenth request is not argued and is treated as waived.

All the issues were fairly and fully presented to the jury, and we find no reversible error.

*Exceptions overruled.*