Jack Paul KOURKENE, Appellant,

v.

AMERICAN BBR, INC., a corporation, Appellee.

No. 17903.

United States Court of Appeals Ninth Circuit.

Jan. 15, 1963.

Rehearing Denied Feb. 21, 1963.

---

1. Act of April 15, 1851, P.L. 669, § 19, 12 P.S. § 1601.

2. Act of April 18, 1949, P.L. 512, art. VI, § 601, 20 P.S. § 320.601.

Barbagelata, Zief & Carmazzi and Leo E. Arnold, Jr., San Francisco, Cal., for appellant.

Rogers, Clark & Jordan, Webster V. Clark and Bernard P. McCullough, San Francisco, Cal., for appellee.

Before HAMLIN and MERRILL, Circuit Judges, and CROCKER, District Judge.

HAMLIN, Circuit Judge.

Appellant filed an action [1] on December 21, 1960, in the United States District Court for the Northern District of California against American BBR, Inc., a Pennsylvania corporation and appellee herein, Joseph T. Ryerson & Sons, Inc. (hereafter Ryerson), a Delaware corporation which does business in California, four individuals who are residents of Switzerland, and certain Swiss corporations and partnership. On May 1, 1961, the United States Marshal served summons and complaint upon Ryerson by delivering a copy of the same to the manager of Ryerson's plant at Emeryville, California. In the same manner, he served Ryerson as the agent for appellee and also as the agent for two Swiss organizations. Appellee and the two Swiss organizations filed a motion on July 11, 1961, to quash this service upon the ground that Ryerson was not their agent. Thereafter, on October 16, 1961, a purported service of process was made upon appellee by delivering a copy of the summons and complaint to the Secretary of State of California pursuant to the

---

[1]. In his complaint appellant seeks damages for alleged breach of contract, fraud and conspiracy. The thirteen counts of the complaint are predicated upon services allegedly performed by appellant and upon conduct of the defendants allegedly occurring during the period from March, 1955, through January, 1957.

provisions of section 411(2) of the California Code of Civil Procedure and section 6501 of the California Corporations Code. On November 6, 1961, appellee filed a motion to quash this service.

The district court, after a hearing, granted the motion of the Swiss organizations and appellee to quash the purported service of May 1 and also granted appellee's motion to quash the service of October 16, 1961. Appellant timely filed a notice of appeal from that portion of the order of the district court granting appellee's motions to quash. Jurisdiction is conferred on this court by the provisions of 28 U.S.C. § 1291.

Appellant contends that the district court erred in holding: (1) that Ryerson was not the agent of appellee for the purpose of service of process; and in holding (2) that appellee was not doing business in the State of California.

We shall first consider appellant's contention that Ryerson was appellee's agent for the purpose of service of process.[2] The record reveals that the four individual Swiss defendants are the owners of a patent covering a method of reinforcing concrete structures known as the BBRV method.[3] They caused appellee to be incorporated under the laws of Pennsylvania on February 11, 1957, to act as their representative and agent in the United States in connection with the licensing of this method. In 1958, at Chicago, Illinois, appellee orally granted to Ryerson a non-exclusive license to use the BBRV method. Under the terms of this agreement Ryerson's sole obligation to appellee was to pay a royalty based upon a percentage of the cost to Ryerson of steel wires or cables used or sold by it in connection with the application of the method. All materials used in the application of the method are purchased by Ryerson in the open market solely for its own account and Ryerson either fabricates the necessary parts or has them fabricated by local dealers. These products are sold by Ryerson solely for its own account to its own customers and without any direction or control by appellee. Appellee does not manufacture or distribute any product in California; nor does it maintain any office or place of business in California.

The Court of Appeals of the Second Circuit in Lopinsky v. Hertz Drive-Ur-Self Systems, Inc.,[4] considered a somewhat similar situation. In that case, service was made upon Hertz in New York by leaving a copy of the summons and complaint with the assistant comptroller of the Carey Drive-ur-self System, Inc., a New York corporation. Hertz maintained no office in New York and did not directly conduct business in New York, but it was contended that Carey was the agent of Hertz. The factual basis for this contention, as outlined by the court, was as follows:

"* * * Hertz devised a plan or system of renting automobiles to customers who drive the automobiles themselves, the system being known under the trade-name of Hertz Drive-Ur-Self System. In order to effectuate the system on a national scale, Hertz licenses hundreds of local individuals and corporations throughout the United States and Canada to use its system and the trade-name. Carey Driveurself, Inc., a New York corporation, is such a Hertz licensee, but independent and locally owned. The license agreement between Hertz and Carey provides, inter alia, for the payment

---

2. Under Rule 4(d) (3) of the Federal Rules of Civil Procedure, service may be obtained on a foreign corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *."

3. The BBRV method is described as a post-tensioning method of reinforcing concrete. Under this method concrete is poured with wires or cables embedded therein; after the concrete has set, the entire structure is pressed together with jacks and each end of the cables is anchored.

4. 194 F.2d 422 (2nd Cir., 1951).

of specified fees by the licensee for each car maintained by Carey in its Driveurself business. The licensee is required to use the Hertz standard form of rental agreement and to permit the licensor to inspect its premises, automobiles and records and accounts. Hertz's obligations are limited to assisting the licensee in procuring the various materials used in the Driveurself business and to help in locating automobiles which may have been stolen from the licensee."

In addition to the foregoing facts, it was pointed out that the Manhattan Telephone Directory listed Carey's address and telephone number under the name of Hertz Drive-Ur-Self System and that an advertisement in the Classified Directory featured the name "Hertz" rather than that of Carey. On these facts, which are more in favor of the server of process than those of the instant case, the court held that Carey was not an agent, but rather was a mere licensee and that therefore Hertz was not jurisdictionally present in the state of New York.

■ There is no evidence in this case to indicate that Ryerson has ever been authorized to represent appellee as its agent for any purpose. We hold that Ryerson was a mere licensee of appellee and that consequently the service on Ryerson was ineffectual for the purpose of acquiring jurisdiction over appellee.

When no officer or agent of a foreign corporation [5] "doing business" in California can be found within the state, section 411(2) of California Code of Civil Procedure and section 6501 of the California Corporations Code authorize service on the corporation by delivery of a copy of the summons and complaint to the Secretary of State. The sole question remaining for our consideration is whether the district court erred in finding that appellee was not "doing business" in California for the purpose of such service.

Appellee's principal place of business is at Philadelphia, Pennsylvania. Since appellee's formation on February 11, 1957, under the laws of Pennsylvania, its activities in California have been few. In July, 1957, its president came to California to attend a world prestressing conference in San Francisco. He again came to California in September, 1957, and met with the State Engineer for the Construction of Bridges at Sacramento in connection with preliminary samples that had been submitted by the Rackle Company of Houston, Texas, to the state; the Rackle Company was a licensee of the BBRV method. The quality of the sample submitted by the Rackle Company was considered and appellee's president pointed out to Rackle's engineer where the samples had not followed the BBRV standard and suggested improvements. Later, in California, appellee's president called the State Engineer and stated that he hoped new samples that had been submitted would prove to be acceptable. In May, 1958, while he was in California, appellee's president entered into BBRV method non-exclusive licensing agreements with W. F. Maxwell Company and Western Concrete Structures, Inc., wherein Maxwell and Western were authorized to use the method in California. None of the appearances of appellee's president in California had anything whatsoever to do with appellant's present cause of action. Appellant's theories of liability are based upon his contacts with the Swiss defendants and Ryerson prior to the formation of appellee.

■ In L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc.,[6] this court, after a thorough analysis of the significant cases (including most of those cited by appellant) that have dealt with the problem of obtaining jurisdiction over a foreign corporation, consider-

---

5. Section 6201 of the California Corporations Code defines "foreign corporation" as "a corporation not incorporated under the laws of this State."

6. 265 F.2d 768 (9th Cir., 1959).

ed the facts of that case in the light of the following three tests: [7]

"(1) The nonresident defendant must do some act or consummate some transaction within the forum. It is not necessary that defendant's agent be physically within the forum, for this act or transaction may be by mail only. A single event will suffice if its effects within the state are substantial enough to qualify under Rule Three.

"(2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. It is conceivable that the actual cause of action might come to fruition in another state, but because of the activities of defendant in the forum state there would still be a 'substantial minimum contact.'

"(3) Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of 'fair play' and 'substantial justice.' If this test is fulfilled, there exists a 'substantial minimum contact' between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens."

Weighing the facts of this case against these tests, we hold that the district court did not err in granting appellee's motion to quash the service made upon it through the Secretary of State. As noted earlier, appellee's principal place of business is in Philadelphia, Pennsylvania. There is no evidence that appellee has ever qualified to do business in this state; has ever maintained any office, records, agents, employees, distributors or representatives in California; has ever manufactured or produced any product or commodity for sale within California; or ever shipped or sold any such product or commodity within California. At the most, the evidence reveals a few isolated activities on the part of appellee in California. Since it is clear that the appellant's cause of action did not arise out of or result from any of these activities, we agree with the district court that "the record is devoid of any evidence which would warrant the conclusion that American BBR is doing business in California."

The order of the district court is affirmed.

**7.** Id. at 773–774. See 47 Georgetown L.J. 342, 351–352 (1958).