**L. C. O'NEIL TRUCKS PTY. LIMITED (formerly Peterbilt (Aust). Pty. Limited), Plaintiff,**

v.

**PACIFIC CAR AND FOUNDRY COM-PANY, Defendant.**

Civ. No. 2724.

United States District Court
D. Hawaii.

Dec. 26, 1967.

Vernon F. L. Char, Damon & Shige-kane, Honolulu, Hawaii, Maxwell M. Blecher, San Francisco, Cal., Marquis Jackson, Sydney, Australia, for plaintiff.

Roy A. Vitousek, Honolulu, Hawaii, Paul Fetterman, Richard S. White, Helsell, Paul, Fetterman, Todd & Hokanson, Seattle, Wash., for defendant.

ORDER DENYING DEFENDANT'S MOTIONS TO QUASH RETURN OF SUMMONS, TO DISMISS OR TRANSFER PURSUANT TO 28 U.S.C. § 1406(a), AND FOR CHANGE OF VENUE UNDER 28 U.S.C. § 1404(a)

PENCE, Chief Judge.

Plaintiff L. C. O'Neil Trucks Pty. Limited, of Australia, seeking treble damages from defendant Pacific Car and Foundry Company, of the United States, for alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, filed its action in the District of Hawaii, pursuant to Section 12 of the Clayton Act.[1]

Pacific Car has moved this court (1) to quash return of summons and dismiss this action, or transfer it to the United States District Court for the Western District of Washington, Northern Division, pursuant to 28 U.S.C. § 1406(a), or (2) for a change of venue under 28 U.S.C. § 1404(a), asserting, inter alia, as to its first motion that it is a corporation organized and existing under the laws of the State of Washington and therefore is not subject to service of process within the District of Hawaii; that plaintiff corporation was formed on May 31, 1963, its agreement with defendant began on July 1, 1963, and therefore its cause of action could not have accrued prior to that date; that defendant has not transacted business or been found within the District of Hawaii within the meaning of Clayton § 12 at any time from May 31, 1963 to the present; and therefore venue cannot lie in the District of Hawaii.

"[T]he only rule of law which is uniformly applicable to all cases involving venue * * * [is that] the decision depends entirely upon the particular facts involved." Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Breeders' and Exhibitors' Ass'n, 344 F.2d 860, 863 (9 Cir. 1965).

Both parties have filed affidavits and other exhibits in support of their respective positions, and the problems have been fully briefed and argued. From that evidence so submitted to this court, the court finds, in pertinent parts, that defendant manufactures two separate lines of heavy duty trucks: Peterbilt and Kenworth. Since July 1, 1963, Peterbilt has had in force contracts with two distributors in Hawaii: with Pell Co., Inc., of Hilo, Hawaii, dated March 1, 1962, and Honolulu Iron Works Company, of Honolulu, Hawaii, dated July 1, 1963. On July 1, 1963, Kenworth had in force a distributor contract with Von Hamm-Young Mercantile Inc., of Honolulu. As of June 15, 1966, the Von Hamm-Young contract was terminated and Amfac, Inc. of Honolulu became Kenworth's Hawaiian distributor.[2]

Hawaiian orders for its trucks and parts are placed with defendant through the local distributors. Pacific Car has

---

1. "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judic'al district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business * * *." 15 U.S.C. § 22.

2. Affidavit of Robert D. O'Brien in Support of Defendant's Motion to Quash Return of Summons, to Dismiss, or for Change of Venue, pp. 2–3.

the option of accepting or rejecting a prospective purchaser's order. Once accepted, defendant processes and fills Hawaiian orders and makes delivery through its distributors. Defendant warrants its merchandise in Hawaii and requires that its distributors maintain adequate sales rooms and service stations and "keep and maintain a sufficient stock of repair parts on hand" to properly service its Hawaiian customers.[3]

Pacific Car has the absolute right to change prices and terms, as well as the construction and design of trucks, on any orders submitted, and the distributor is bound thereby. Its distributors must furnish Pacific Car, each month, with a list of all new customers, name, address, trucks delivered, "and such other information as requested" by the defendant.[4]

Defendant's top management personnel have made goodwill, business expansion, and/or service visits to Hawaii from time to time, including: (1) three trips by Peterbilt's export sales manager between March 1964 and June 1965; (2) one trip to Hawaii by the general manager of Peterbilt in May 1965; and (3) one trip each by Peterbilt's general manager and general sales manager in June 1965.[5]

Defendant's general manager while in Hawaii in May 1965, for business expansion purposes, engaged in negotiations with Hawaiian corporations for entry by those corporations with the defendant into the Australian market.[6]

Plaintiff's American promoter was a resident of Hawaii at the time he entered into negotiations and had discussions and visits in and out of Honolulu with the representatives of Peterbilt concerning its subsequent contract with plaintiff.[7]

Defendant, in support of its motion on the venue issue, relies heavily on the authority of L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc., 265 F.2d 768 (9 Cir. 1959) (action for breach of contract, case dismissed and service of process quashed because there was no minimum contact between defendant and the forum), and of Kourkene v. American BBR, Inc., 313 F.2d 769 (9 Cir. 1963) (action for breach of contract, service of process quashed for insufficient contact between defendant and the forum), urging that the above facts do not meet all of the three tests laid down in *Reeder* and that *Reeder* must be here controlling. Those three tests are (1) defendant must do some act or consummate some transaction within the forum; (2) the cause of action must arise out of or result from activities of defendant within the forum; and (3) assuming a minimum contact under tests (1) and (2), jurisdiction must be consonant with due process tenets of "fair play" and "substantial justice."

■■■ That *Reeder* was *not* an antitrust action must not be overlooked. The requirements for finding venue in diversity actions are much more stringent than the requirements for finding venue under Clayton § 12. Under Clayton § 12 the cause of action need not arise out of or result from activities of the defendant within the forum.[8]

■■ Neither in *Reeder* nor *Kourkene*, nor Mechanical Contractors Ass'n v. Mechanical Contractors Ass'n of Northern Cal., Inc., 342 F.2d 393 (9 Cir. 1965),

---

3. Exhibits "A" and "B" attached to Affidavit of Robert D. O'Brien in Support of Defendant's Motion to Quash, etc.

4. Exhibits "A" and "B," supra n. 3.

5. Letters marked "I", "J" and "K" referred to in Affidavit of Laurence C. O'Neil attached to Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion to Quash, etc.; also Affidavit of Robert D. O'Brien, supra n. 2.

6. Letter "J", supra n. 5.

7. Letters marked "A", "B", "C" and "D" referred to in Affidavit of Laurence C. O'Neil attached to Plaintiff's Supplemental Memorandum in Opposition, etc.

8. United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); United States v. National City Lines, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948); Eastland Construction Co. v. Keasbey & Mattison Co., 358 F.2d 777 (9 Cir. 1966).

did the Ninth Circuit interpret the venue requirements of Section 12 of the Clayton Act. The Clayton § 12 requirements were considered in *Courtesy Chevrolet,* supra, (civil antitrust action against the Walking Horse Breeders' Association). Although the *Reeder* tests *were* all met in *Courtesy Chevrolet,* the latter case does *not* require that those specific standards must be met in order to find venue in an antitrust action.[9] The basic law of *Courtesy Chevrolet* is that one must consider the totality of the facts in each particular case to determine whether defendant is found or is doing such business therein as makes it reasonable or unreasonable to compel defendant to appear in the forum of plaintiff's choice. 344 F.2d 860, 865.

■ From the facts set forth, supra, it is clear that the defendant has carried on more than minimal business activities in the District of Hawaii. The fundamentals of the distributorship contract of the parties out of which this action has arisen, were initially negotiated in Hawaii. The defendant has three distributors within the district. The defendant has a very substantial control over the parts and services which must be kept and maintained by its distributors in Hawaii. Not dissimilar to *McGee,*[10] the defendant's warranty is intended to and does apply in Hawaii to all of defendant's products sold throughout Hawaii. Defendant can, without notice to its distributors, change the prices and terms, as well as the construction and design of trucks destined for Hawaii, *after* the orders have been taken by its Hawaiian distributors, and such changes are binding on the distributor.[11] Defendant's

sales, services and warranty requirements are thus welded to each sale in Hawaii of its products.

The activities in Hawaii of its top management officials during the years here involved, affecting not only its business in Hawaii but also its business in Australia, have been much more than minimal. Defendant's distributor contracts secure and maintain a tight control in Hawaii over almost every phase of the distributors' business save and except the actual job of selling and servicing defendant's trucks. Cf. *Courtesy Chevrolet,* supra, 344 F.2d at 865.

The above facts, inter alia, taken in their totality determine that this court must find that defendant has been and is doing business in Hawaii within the purview of Clayton § 12, and it is not unreasonable to compel the defendant to appear and answer in this forum. The court finds that venue is properly laid in the District of Hawaii.

■ As an alternative motion, upon determination of the venue problem adversely to the defendant, defendant seeks transfer pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Western District of Washington, Northern Division, where it has its home office, alleging that the District of Hawaii is an inconvenient forum. Section 1404(a) provides for transfer when such would be "for the convenience of parties and witnesses, in the interest of justice." Since venue is properly laid in this forum the burden is on the defendant to show that a change of venue will advance the interests of justice and convenience.

---

9. After the court had already determined that the acts of the defendant were sufficient to fulfill the venue requirements of Clayton § 12, it continued:
   "Similar to the holding of this court in Mechanical Contractors [supra, 342 F.2d 393] we here *also* 'think that the totality of the facts shown by this record satisfies the three tests laid down by us in L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc., 9 Cir., 1959, 265 F.2d 768, and Kourkene v. American BBR, Inc., 9 Cir., 1963,

313 F.2d 769.'" (Emphasis added.) 344 F.2d 860, 866.

10. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

11. Cf. *McGee,* supra n. 10; Travelers Health Ass'n v. Commonwealth of Virginia ex rel. State Corp. Commission, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In making this determination, the plaintiff's choice of forum should not be lightly set aside. In enacting Clayton § 12, Congress' concern was "to provide broader and more effective relief, both substantively and procedurally, for persons injured by violations of its antitrust policy. Insofar as convenience in bringing suit and conducting trial was involved, the purpose was to make these less inconvenient for plaintiffs, or, as was said in the *Eastman* opinion [Eastman Kodak Co. v. Southern Photo Material Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684], to remove the 'often insuperable obstacle' thrown in their way by the existing venue restrictions." Congress "intended trial to take place in the district specified by the statute and selected by the plaintiff." The provisions of Clayton §§ 4 and 12 were each "designed to aid plaintiffs by giving them a wider choice of venues, and thereby to secure a more effective, because more convenient, enforcement of antitrust prohibitions." [12]

Defendant argues that it will incur great expense and undue hardship in transporting witnesses and documents to Hawaii in order to properly defend this action. However, at this stage of the litigation it is impossible for this court to ascertain with any definitive approximation the burden which defendant may incur. The availability of modern document duplicating equipment and depositions would certainly greatly reduce defendant's cost and inconvenience in conducting this litigation in Hawaii. Transfer, on the other hand, would further burden this foreign plaintiff who has chosen the American forum nearest its home base to seek redress for its alleged grievances. Transfer under Section 1404 (a) rests upon the discretion of the court, as determined on the facts of each particular case. In its present posture, the court does not find that the interest of justice demands transfer of this action.

It is therefore ordered that defendant's motions to quash summons or dismiss or transfer venue under 28 U.S.C. § 1406(a) and for transfer under 28 U.S.C. § 1404 (a) be and hereby are denied.

12. United States v. National City Lines, Inc., 334 U.S. 573, 581, 582, 586, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948).