See also D.C., 274 F.Supp. 513.

**Arnold G. PESSIN and Rex C. Ellsworth, Plaintiffs,**

v.

**KEENELAND ASSOCIATION, University of Kentucky Research Foundation and the Bank of New York, Defendants.**

**No. 1800.**

United States District Court
E. D. Kentucky,
Lexington Division.

July 30, 1968.

**12**

Hurst & Burnett, Lexington, Ky., for plaintiffs.

Stoll, Keenon & Park, Lexington, Ky., for defendant Keeneland Assn.

Harbison, Kessinger, Lisle & Bush, Lexington, Ky., for defendant University of Kentucky Research Foundation.

Gess, Mattingly, Saunier & Atchison, Lexington, Ky., for defendant Bank of New York.

## OPINION

SWINFORD, Chief Judge.

Elizabeth Nightingale Graham died on October 18, 1966. At the time of her death she owned all or substantially all of the stock of Elizabeth Arden, Inc., a New York corporation. Elizabeth Ar-

den, Inc. owned Maine Chance Farm in Fayette County, Kentucky. This farm of approximately 720 acres is acknowledged to be one of the finest bluegrass farms in the state with a value of between $1,850,000 and $2,500,000. In order to settle the estate of Elizabeth Nightingale Graham, the Maine Chance Farm was offered for sale. It was purchased by the University of Kentucky Research Foundation for two million dollars on July 31, 1967.

On August 14, 1967 the plaintiffs, Arnold G. Pessin and Rex C. Ellsworth, filed this action against Keeneland Association and the University of Kentucky Research Foundation. The defendant, The Bank of New York, was later made a party. The complaint alleges that the action arises under the provisions of the Sherman Anti-Trust Act, 15 U.S.C. Sec. 1 et seq. This court has jurisdiction of the action by reason of 15 U.S.C. § 15, which provides that any person injured in his business or property by reason of anything forbidden in the antitrust laws may sue in the district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, etc.

Process was executed on the original defendants, Keeneland Association and the University of Kentucky Research Foundation, on the same day that the action was filed. On August 22, 1967, which was eight days after the action was filed, notice was given by the defendant, Keeneland Association, that on August 30, 1967, it would take, for discovery purposes, the deposition of Judge Joe Johnson, County Judge of Fayette County. This was the first of 2053 pages of depositions that have been taken by all parties concerned in this action.

On September 1, 1967, the defendant, Keeneland Association, filed a motion to strike certain allegations from the complaint. Simultaneously, it filed its an-

swer in which it denied all material allegations set forth in the complaint. On the same date, the University of Kentucky Research Foundation filed its motion to strike certain allegations from the complaint and filed its answer denying all material allegations set forth in the complaint. On October 6, 1967, the Keeneland Association moved the court to dismiss the complaint herein for failure to state a claim upon which relief can be granted. On December 27, 1967, the defendants, Keeneland Association and the University of Kentucky Research Foundation, each filed a motion to enter a summary judgment in its favor. The motions were based on the pleadings, depositions, exhibits, answers to interrogatories and admissions filed in the record.

On motion of the plaintiffs and by order of the court of January 9, 1968, The Bank of New York was made a party defendant to this action. On February 1, 1968, The Bank of New York, without waiving its questions of jurisdiction, moved the court to dismiss the action against it for lack of jurisdiction over the person of the bank, insufficiency of process, insufficiency of service of process and improper venue; to quash the attempted service of process upon the movant by serving the Secretary of State of Kentucky; and to quash the marshal's return upon the process upon the grounds that the movant is a foreign corporation, not qualified or licensed to do business in the State of Kentucky and did not maintain an office in the State of Kentucky, nor have an officer or special agent in the State of Kentucky upon whom process could be legally obtained. On June 24, 1968, The Bank of New York filed a "Motion to Quash Service of Process and Return Thereon".

The court will consider these motions in the order in which they are presented.

■ Rule 12(f), Rules of Civil Procedure, 28 U.S.C., provides that a party may move the court to strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Such motions will not ordinarily be granted unless it is apparent that the allegations sought to be stricken can have no possible relation to the controversy. Mitchell v. Hart, D.C., 41 F.R.D. 138. Such motions are considered as time wasters and are not favored. Hoffman Motors Corporation v. Alfa Romeo S.p.A., D.C., 244 F.Supp. 70, 81. Where the allegations cannot harm the defendants, under proper judicial supervision, they should be permitted to remain in the pleading. Rhodes v. Meyer, D.C., 225 F.Supp. 80, 95, aff. 8 Cir., 334 F.2d 709, cert. denied, 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186. The application of this rule, which is in the discretion of the trial judge, should be resorted to only where the pleading contains such allegations that are obviously false and clearly injurious to a party to the action because of the kind of language used or that the allegations are unmistakably unrelated to the subject matter. I do not find the allegations in the complaint of such a nature and the motions to strike from the complaint should be overruled.

■ The motion to dismiss the complaint, for the sake of the motion, admits all the allegations in the complaint and the allegations must be construed most favorably to the pleader. 1A Barron & Holtzoff (Wright), Federal Practice and Procedure, Sec. 350.

This is a private antitrust action in which the plaintiffs charge that the defendants, under the terms of the Sherman Anti-Trust Act, are guilty of a violation of law for which there is liability. Paragraph (9) of the complaint (and related allegations in the whole pleading) states their cause of action. It is in words and figures as follows:

"The defendants, to monopolize or attempt to monopolize the thoroughbred horse auction sales business in Kentucky, did combine and conspire among themselves and other persons

or associations unknown to the plaintiffs in order to deprive the plaintiffs of acquiring the aforesaid Maine Chance Farm and thereby to deprive the plaintiffs of their ability to engage in the thoroughbred horse auction sales business in Kentucky; and through and as a part of said combination and conspiracy, did induce said Bank of New York to communicate to the defendant, Keeneland Association, or its representative or representatives the aforesaid offer of the plaintiffs immediately upon receiving it; did induce and persuade the Board of Directors of the defendant, The University of Kentucky Research Foundation, to authorize said The University of Kentucky Research Foundation forthwith to offer said Bank of New York the sum of Two Million ($2,000,000) Dollars for said Maine Chance Farm; and did induce and persuade said Bank of New York, in violation of its fiduciary duty to the estate of the said Elizabeth Nightingale Graham, forthwith to accept said offer of Two Million ($2,000,000) Dollars for said farm without attempting to inform the plaintiffs of said Two Million ($2,000,000) Dollars and determine whether the plaintiffs in fact would offer a larger price for said farm prior to accepting said offer of Two Million ($2,000,000) Dollars."

█ If the complaint, under any reasonable reading, states a claim upon which relief can be granted, the cause of action must be sustained and admitted to proof. D'Ippolito v. Cities Service Company, 2 Cir., 374 F.2d 643 (1967); Paul M. Harrod Company v. A. B. Dick Company, D.C., 204 F.Supp. 580. The Court of Appeals for the Sixth Circuit, in Dann v. Studebaker-Packard Corporation, 288 F.2d 201, 215 (1961), expressed the well recognized rule that motions to dismiss, in general, are not favored and should be sustained sparingly and cautiously and then only where it appears to a certainty that no set of facts could be proven which would entitle the plaintiff to any relief.

It is argued by the defendants that this whole matter concerns only the sale of one farm in a land and immediate community where many farms of equal fertility, productivity and locality, could be acquired by the plaintiffs. For this reason, they say, they could not possibly be engaged in a conspiracy in restraint of trade. I cannot follow this reasoning. The question presented in this case is not whether the plaintiffs could have found something equal or better for their avowed enterprise but whether the defendants have conspired to prevent the plaintiffs from obtaining this particular farm in order to compete in the thoroughbred horse auction sales business with the Keeneland Association. Such reasoning would require aspirants to the establishment of a competing business to exhaust all available opportunities in their localities before the right of action could arise. It is claimed by the plaintiffs that the Maine Chance Farm has a unique value for the particular purposes to which they propose to put it. This is a reasonable allegation and should not be ignored on the assumption that it is not true because of the fact that there are thousands of acres of land in the bluegrass that could be adapted to the purposes desired. That of itself is a matter of proof. The court cannot assume to determine, without proof, what land is or is not adapted to thoroughbred horse auction sales or what land, even though equally as attractive as Maine Chance Farm, would be available to be acquired by the plaintiffs at the same price or any price. The court will assume, with some knowledge of the bluegrass region of Kentucky, to state that there are farms that cannot be bought at any price.

█ The complaint alleges that the defendant, Keeneland Association, has a monopoly on the thoroughbred horse auction sales business and seeks to perpetuate that monopoly. The motion

to dismiss admits this fact. The Congress has by legislation stated that such activities are injurious to the public and that the law protects the victims of the forbidden practices as well as the public. Radovich v. National Football League, 352 U.S. 445, 454, 77 S.Ct. 390, 1 L.Ed. 2d 456. See also Radiant Burners v. Peoples Gas Co., 364 U.S. 656, 660, 81 S.Ct. 365, 5 L.Ed.2d 358, where the Court said that to state a claim upon which relief can be granted requires only allegations adequate to show a violation and that the plaintiff was damaged thereby.

The claim by the defendants that the complaint fails to state a cause of action because it does not allege injury to an existing business is not acceptable on either fact or law. It is expressly stated that these plaintiffs are actively engaged in the thoroughbred horse business in all of its phases, buying, selling, breeding, training, racing, etc. The record discloses and is replete with evidence that the plaintiffs are professional thoroughbred horsemen of many years experience and that they are amply financed to carry out their avowed purposes for a successful operation.

To argue that no one other than an active competitor in a given business could attack a monopoly would be to deny the whole purpose and spirit of the antitrust laws. Such reasoning is entirely untenable. All monopolies would be secure in their monopoly if they could only be attacked by competitors. The court knows, as do most Americans, that many monopolies were created by the practice of a large competitor buying out a small competitor who was complaining about the large competitor's practices. Monopolies are most often attacked by ambitious business people who want to engage in like enterprises. It is just as unlawful to prevent the establishment of a new business as it is to drive an established business into bankruptcy. Delaware Valley Marine Supply Co. v. American Tobacco Co., D.C., 184

F.Supp. 440; Washington Professional Basketball Corp. v. National Basketball Ass'n, D.C., 147 F.Supp. 154.

"Motions to dismiss are sparingly granted and only if the averments in the pleading attacked disclose with certainty the impossibility of proving a claim upon which relief can be granted." 1A Barron & Holtzoff (Wright), Federal Practice and Procedure, Sec. 350. Federal practice does not require a claimant to set out in detail the facts on which he bases his claim. Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80.

The complaint states a cause of action and the plaintiffs are entitled to an opportunity to present their charges. Radovich v. National Football League, supra.

The motion to dismiss the complaint should be overruled.

■■■ The motions for summary judgment, filed by the original defendants, Keeneland Association and the University of Kentucky Research Foundation, ask that the court enter judgment for the defendants and dismiss this action as a matter of law. They urge that the depositions are determinative of all issues of fact and that the prayer of the plaintiffs' complaint should be denied.

Rule 56, Rules of Civil Procedure, 28 U.S.C., under which these motions are made, does not permit the court to try issues of fact. It can only determine whether there are issues to be tried. Summary judgment procedure is not a substitute for the trial of disputed issues of fact. The evidence adduced from the depositions clearly establishes the fact that these litigants are in serious disagreement on material matters that go to the very root of the claim of the plaintiffs.

■■■ In considering the motions for summary judgment, I do not propose to go into great detail and undertake to select or recite any part or parts from the great volume of testimony presented in the record by the depositions of thir-

ty-one witnesses. It is not proper for the court to draw conclusions or inferences on which the ultimate determination of the case may depend. The court can only rule on the motions in the light of the facts stated in the pleadings and in the evidence before it to determine the one legal proposition and that is whether or not there are sufficient facts stated by the record to entitle the plaintiffs to a trial. Traditional American justice is best served at a public hearing in a courtroom. Upon a hearing of the whole case, a jury might decide the case for the defendants. The court cannot determine from this record that there is conclusive evidence for either side or that it is quite clear where the truth lies. The law requires that at this stage of the proceeding the court must look at the record in the light most favorable to the parties opposing the motion. Summary procedures should be used sparingly in complex antitrust litigation "where motive and intent play leading roles, (and) the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458.

It is the theory of the plaintiffs that the Keeneland Association enjoys a well entrenched and powerful monopoly of the thoroughbred horse auction sales business in Kentucky; that in order to protect this dominant position from which it enjoys an annual income of many millions of dollars, it actively sought to exploit its influence and friendship with officials of the University; that the evidence clearly establishes an avowed purpose to keep them out of competition with Keeneland; that those in authority at the University and in charge of the trust funds of the University of Kentucky Research Foundation willingly participated in an unlawful enterprise which resulted in a denial to the plaintiffs of their right to engage in free enterprise and to leave untouched the Keeneland monopoly.

It is the theory of the defendants that there is no evidence of conspiracy or wrongdoing on their part; that, to the contrary, it is now established of record that the purchase of Maine Chance Farm was the culmination of a plan which had been in the minds of the authorities of the University of Kentucky for many years; that its acquisition by the University was a logical sequence to its obtaining ownership of Spindletop and Coldstream Farms adjacent to it. It is the theory of the University, its officials, board, alumni and friends, that it has a very bright future as an institution of learning and that long term planning, such as the purchase of this farm, is not only good business but absolutely essential to its academic standing.

The defendant, Keeneland Association, denies any participation in the purchase of the farm whatsoever, and, consequently maintains that nothing in the evidence identifies it as entering into a joint enterprise with the University of Kentucky Research Foundation or The Bank of New York; that the depositions of certain individuals who were interested, either financially or otherwise, in the Keeneland Association, showed no participation of such individuals in acquiring the farm or in arranging the financial plan which the University of Kentucky adopted; and that these individuals were only interested as citizens of Kentucky who were concerned about the future of the University and were strongly in favor of the purchase of the farm for the University with no idea that their interest could be interpreted as furthering the business interests of the Keeneland Association.

A trial judge should be slow to grant a motion for summary judg-

ment in disposing of a case of any complexity. A party should not be deprived of an adequate opportunity to fully develop his case by witnesses and a trial. Frequently, the basic facts are not in dispute but the parties may in good faith disagree upon the inferences to be drawn from the facts. Under such circumstances the case is not one to be decided by the trial judge and thereby deny the plaintiff the right to trial by jury. S. J. Groves & Sons Company v. Ohio Turnpike Commission, 6 Cir., 315 F.2d 235, cert. denied, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57. See also the numerous cases cited by Judge Shackelford Miller, Jr. in the opinion.

See also Hart v. Johnston, 6 Cir., 389 F.2d 239; Barton v. Gas Service Company, Inc. (Ky.), 423 S.W.2d 902; and for the rule that a party opposing a motion for summary judgment should be given all favorable inferences with the motion construed in the light most favorable to him see Rogers v. Peabody Coal Co., 6 Cir., 342 F.2d 749; White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738; Southern Blowpipe & Roofing Co. v. Chattanooga Gas Company, 6 Cir., 360 F.2d 79; Bohn Aluminum & Brass Corp. v. Storm King Corp., 6 Cir., 303 F.2d 425, 427.

This court is of the opinion that the above authorities are applicable to this case and summary judgment is not proper at this stage of the proceedings.

The motions for summary judgment should be overruled.

In considering the motion of the defendant, The Bank of New York, to dismiss the action for lack of jurisdiction and venue, the court is of the opinion that the record does not justify such action. The bank is before the court under the provisions of Section 12 of the Clayton Act, 15 U.S.C. 22, which provides that actions brought under the antitrust laws against a corporation may be brought in any judicial district where the corporation transacts business and

that process may be served in the district of which it is an inhabitant or wherever found.

The factual issue is whether or not The Bank of New York is doing business in Kentucky. It is difficult for the court to understand how the bank can contend that it is not doing business in Kentucky. As a co-executor, employed at what must be reasonably assumed for a substantial fee, it operated a two million dollar farming enterprise in Kentucky for a period of at least seven months. It engaged in actively managing numerous employees on the farm who had under their charge hundreds of thousands of dollars worth of personal property in the form of livestock, a large tobacco crop, expensive and numerous farm machinery, and was in constant contact by telephone with its employees and agents on the farm. Notwithstanding the fact that this absentee landlord expected its two and a half million dollars investment in Kentucky to be protected by the laws of Kentucky and to be kept intact for its benefit, it objects to subjecting itself to the courts of Kentucky.

It would serve no purpose for the court to academically discuss what is meant by doing business in Kentucky in the light of the numerous authorities, led by the landmark cases of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223, as the rules of law therein apply to the undisputed facts in this case.

The court also holds that The Bank of New York by so transacting or doing business within the Commonwealth of Kentucky can be said to be "found" in the Eastern District of Kentucky within the scope of Section 22, Title 15, United States Code, regarding the service of process. KRS 271.610(2); L. C. O'Neil Trucks Pty. Limited v. Pacific Car & Foundry Co., D.C., 278 F.Supp. 839 (1967); Star Elkhorn Coal Co. v.

Red Ash Pocahontas Coal Co., D.C., 102 F.Supp. 258.

The motions of the defendant, The Bank of New York, to dismiss for lack of jurisdiction over the person, insufficiency of process, insufficiency of service of process, improper venue and to quash the service of process and return thereon, should be overruled.

An order in conformity with this opinion is this day entered.