## Riverside Memorial Mausoleum v. UMET Trust

*Arnold Levin,* for plaintiff.
*Nathan B. Finestein,* for defendant.

GUARINO, *J.,* April 24, 1980—This is an action in assumpsit and trespass for breach of contract and tortious interference with contract. The matter is before us on defendant's preliminary objection raising: (1) lack of in personam jurisdiction, (2) improper service, (3) misjoinder of defendants, (4) de-

murrers, and (5) for more specific pleadings. The demurrers are based on (a) statute of limitations, (b) statute of frauds, (c) res judicata or collateral estoppel, as well as (d) failure to state a good cause of action. At oral argument on the preliminary objection, I suggested that the parties amplify the record so that the issues raised could be determined. The parties have done so by filing stipulations and affidavits. For the purpose of determining the issues, the stipulation and affidavits of the parties as well as the averment of the pleadings and preliminary objections will be considered.[1]

UMET is an unincorporated real estate investment trust, organized and existing under the laws of California with business address at Suite 500, 9595 Wilshire Boulevard, Beverly Hills, CA. The individual defendants are or have been trustees of UMET; none of the individual defendants reside in Pennsylvania; all live at unspecified addresses in California. The complaint alleges defendant UMET contracted to give plaintiffs, Philadelphia residents, a construction mortgage in the sum of $7,100,000 for a mausoleum they were building in Philadelphia. It is further alleged that the commitment was given with the "knowledge, authorization and ratification" of the individual defendants. It is alleged that UMET failed to perform under the terms of the contract in that it failed to give to them the entire mortgage amount agreed upon; that the breach was

---

1. It is noted that the preliminary objections were verified and under oath and were endorsed with notice to plead. There was no counter responsive pleading to these preliminary objections. For the purpose of determining the facts on the issues raised by such a preliminary objection, we are guided by Pa. R.C.P. 1029: "Averments . . . to which a responsive pleading is required are admitted when not denied . . . A general denial . . . shall have the effect of an admission." Id. (b).

with the knowledge, authorization and ratification of the individual defendants. In its tort action, plaintiffs aver that the tortious collusion of UMET's individual defendants, who were its trustees, and the corporate defendant, who was the broker, caused them to lose their entire investment in the mausoleum and forced them into bankruptcy.

None of the individual defendants have been in Pennsylvania in connection with the transaction, nor are they engaged or have ever engaged in business in Pennsylvania. They do not reside or maintain offices of any kind in Pennsylvania. They reside and their business is conducted at the office of UMET, Suite 500, 9595 Wilshire Boulevard, Beverly Hills, Ca.

Service of the complaint was accomplished by deputizing the Secretary of the Commonwealth, with copies of the complaint sent by registered mail, return receipt requested, to each of the fifteen individual defendants, at the office of UMET, Suite 500, 9595 Wilshire Boulevard, Beverly Hills, Ca. 90212.

The question of the in personam jurisdiction over the trustees as individual defendants is pivotal to this case. Without a definitive and final determination on this issue, inquiry into the other preliminary matters will be unavailing. Hence, at this time, we have determined to address only the issue of jurisdiction, deferring consideration on the other preliminary objection until parties shall have had an opportunity to have the ruling reviewed. The Act of June 3, 1925, as amended, P.L. 131, Sec. 1 [§509(a)(81)], 12 P.S. §674,[2] offers, in limine, a

2. Repealed by Sec. 2(a)[1069] of Act of April 28, 1978, P.L. 202, generally effective June 27, 1978, to take effect two years after said effective date. Pa. R.C.P. 1451(b)(7) preserved the appeal time. See also, Zakian v. Liljestrand, et al., 438 Pa. 249, 264 A.2d 638 (1970).

speedy means of securing a determination of jurisdiction over defendants. See Sun Ship, etc., Assn. v. I.U.M.S.W. of A., 351 Pa. 84, 88, 40 A.2d 413 (1944). An appeal from a ruling on jurisdiction must be made within 15 days; a failure to appeal within that time frame will be deemed a waiver of jurisdiction over the person. See also Malis v. Lieberman, et al., 439 Pa. 602, 266 A.2d 745 (1970); Colonial Pipeline Co. v. Peery, et al., 434 Pa. 244, 252 A.2d 697 (1969); Scientific Living, Inc. v. Hohensee, 427 Pa. 320, 235 A.2d 393 (1967).

The test of whether jurisdiction lies against the nonresident individual defendants is twofold: (1) whether the exercise of jurisdiction comports with due process, International Shoe Co. v. Washington, 226 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); (2) whether the long arm statute of the state permits it. Rosen v. Solomon, 374 F.Supp. 915 (E.D. Pa. 1974); Aramco Automatic, Inc. v. Taylor, 368 F.Supp. 1283 (E.D.Pa. 1973).

### 1.

In addressing this same issue in Donahue v. Bradway & Sons, et al., 3 PICO 304 (C.P. Phila. 1979), I briefly traced the history of the due process criteria for the state's exercise of personal jurisdiction over persons outside the state. What I stated there at pp. 308-309 is equally applicable here.

"A court is a forum set up by the sovereign to hear and decide controversies arising within its territorial limits. The jurisdictional competence of a court, the authority to hear and decide controversies, includes a consideration of the power over persons as well as over subject matter." Commonwealth v. Little, 455 Pa. 163, 314 A.2d 270, aff'd 468 Pa. 13, 359 A.2d 788 (1976). It is only where the court has jurisdic-

tion over the parties and the subject matter that it has power to act on the premises and render judgment [that will bind the parties]. McFarland v. Weiland Packing Co., Inc., 416 Pa. 277, 206 A.2d 18 (1965); Slezynger v. Bischak, 224 Pa. Super. 552, 307 A.2d 405 (1973). Jurisdiction of the person is no less important than jurisdiction of the court over the cause of action.

The authority of the court cannot constitutionally extend beyond the territorial limits of the sovereign itself. See Giampalo v. Taylor, 335 Pa. 121, 6 A.2d 499 (1939). Historically the jurisdiction of the court to render a judgment in personam was grounded on de facto power over defendant's person. His presence within the territorial jurisdictional limits was a prerequisite to bind him to the judgment of the court. Jurisdiction depended to a large extent on the power of the court to serve process on the person within its territorial sway. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877); International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Jurisdictionally, [the presence of defendant] came to be identified with [his] activity . . . within the territorial limit of the forum. If defendant, albeit outside the forum, committed acts or activity within the territory of the forum of a continuous and substantial nature, he would be amenable to the forum's power." International Shoe Co. v. Washington, supra.

In attempting to delineate the constitutional requirement which must be fulfilled in order to uphold jurisdiction, the United States Supreme Court, in its landmark decision, in International Shoe Co. v. Washington, supra., held that due process is satisfied when the nonresident has certain "minimum contacts" with the state so that "maintenance of a suit does not offend traditional notions of fair play

and substantial justice." Id. p. 316. In a later case of McGee v. International Life Ins. Co., 355 U.S. 220 (1957), the court upheld a "single contact" having a "substantial connection" with the forum state to be sufficient. In Hanson v. Denckla, 357 U.S. 235, 78 S.CE. 1228, 2 L.Ed. 2d. 1283 (1958), the Supreme Court held that the nonresident must purposefully avail himself of conducting activity in the forum state, stating:

". . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State thus invoking the benefits and protection of its laws." 357 U.S. at 253, 78 S.Ct. at 1240.

Since "minimum contacts" is a broad term, our courts have developed a three part test for determining whether "minimum contacts" are present in a given situation. First, defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. Hanson v. Denckla, supra. Secondly, the cause of action must arise from defendant's activities within the forum state. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Southern Mach. Co. v. Mahasco Indus., Inc., 401 F.2d 374 (6th Cir. 1968); Electric Regulater Corp. v. Sterling Extruder Corp., 280 F.Supp. 550 (D. Conn. 1968). Finally, the acts of defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. International Shoe Co. v. Washington, supra; see also, In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220 (6th Cir. 1972); Kourkene v. American BBR, Inc., 313 F.2d 769 (9th Cir. 1963).

2

The basis for personal jurisdiction over persons outside the state in Pennsylvania is governed by statute. Sec. 5322 of the Judicial Code, 42 Pa. C.S. §5322, provides that a Pennsylvania tribunal may exercise personal jurisdiction over nonresidents who act directly or by an agent . . . by (1) transacting business in the Commonwealth, (2) contracting to supply services or things in this Commonwealth, (3) causing harm or tortious injury by an act within the Commonwealth, (4) causing harm or tortious injury by an act outside the state, (5) having interest in real property in the state, (6) contracting to insure person or property in Commonwealth, (7) accepting government appointments, (8) executing fiduciary bonds, (9) applying for license, or (10) violating the trust. In addition, jurisdiction may be based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States. 42 Pa. C.S. §5322(b), see also, 42 Pa. C.S. §5308;

Reliance for exercising personal jurisdiction over the individual defendants is based on acts of agents in transacting business and in interfering with contractual obligations. It is argued by plaintiffs-respondents that since UMET is not a corporation, its members are, as individuals, liable for acts of their agents committed within the state. See Vespe Contracting Co. v. Anvan Corp., 443 F.Supp. 1226 (E.D.Pa. 1977); B.J. McAdams, Inc. v. Boggs, 426 F.Supp. 1091 (E.D.Pa. 1977). The individual defendants' argument is that they should be treated as a corporation, for while the acts of agents are imputable to the entity, they are not imputable to them as trustees of a Massachusettes Trust. They cite Miller v. American Telephone and Telegraph Co., et al.,

394 F.Supp. 58 (E.D.Pa. 1975); Spelling-Goldberg Productions v. Bodick & Rhodes, 452 F.Supp. 452 (E.D.Pa. 1978); Hess v. M. Aaron, 4 D.&C. 3d 153 (1977); Witt v. Scully, 539 F.2d 950 (3rd Cir. 1976).

Indeed, in deciding whether nonresident members of a business entity are amenable to the jurisdiction of the forum state for acts committed within it by another, courts have applied the law of agency and made a distinction between a corporation and an unincorporated entity. In B.J. McAdams, Inc. v. Boggs, supra, plaintiff sued Boggs and certain Florida investors who had appointed Boggs their "trustee or agent to represent them" in the acquisition of certain stocks which plaintiff had been negotiating to purchase through Boggs, their former employee. Boggs consummated the purchase for the Floridian investors and signed the agreement as "trustee". On the question of personal jurisdiction over the nonresident investor, the court had this to say at page 1097:

"Boggs consummated the stock purchase transaction in Cornwell Heights, Pennsylvania, and in doing so committed the allegedly "tortious act within this Commonwealth" which plaintiff alleges caused injury to it. Since Boggs performed these acts within Pennsylvania as agent for the investors under the trust agreement, the investors have thus, acting through an agent, committed a tortious act within Pennsylvania and are subject to service under §8303." Vespe Contracting Co. v. Anvan Corp., supra.

On the other hand, in Miller v. American Telephone & Telegraph Co., supra, where the stockholders brought an action against the corporation and against directors who were nonresidents, the court stated that the activities of the directors "on the behalf of the corporate defendant are not rel-

evant to a finding of in personam jurisdiction over them as individuals . . .", at page 64, the court concluded with "it is clear that the individual defendants do not have the necessary ties or contact with Pennsylvania."

In Spelling-Goldberg Productions v. Bodick & Rhodes, supra, where two corporations and the president of one were sued, the court stated the rule:

"The Court finds, though, that it is necessary to look to Mr. Schneider's contacts, and not the corporations' contacts, with Pennsylvania in order to determine whether jurisdiction may be maintained. Under 42 Pa. C.S.A. §8304, substituted service effectively can be made on a nonresident individual if that individual did business in the Commonwealth at the time the cause of action accrued. *Relevant to the determination of whether an individual has done business in the Commonwealth, is the individual's activities and not his corporation's or those done by him on behalf of the corporation as an officer or agent. Establishing personal jurisdiction over an individual on the basis of 'doing business' requires that the evidence show not only that the individual did business within Pennsylvania as defined in 42 Pa. C.S.A. §8309, but that the business was done by the individual for himself and not for or on behalf of his corporation."* (Emphasis supplied.) See also, Feld v. Tele-view, Inc. 422 F. Supp. 1100 (E.D. Pa. 1976); Witt v. Scully, supra.

UMET is an unincorporated real estate investment trust formed in 1969 by a Declaration of Trust filed and existing under the laws of California, and organized as a business for a profit. Currently, the beneficial interest is divided into 2,108,512 transferable certificates which are traded on the New York Stock Exchange and the Pacific Stock Exchange,

and registered with the Securities and Exchange. There are 2,600 certificate holders. Legal title to the assets of the business is exclusively in the trustees who are elected annually by the certificate holders at the annual meeting. These trustees have unfettered authority over the business and its affairs. Their powers and duties, spelled out in the declaration of trust, are very much like those of directors of a corporation. Should a shareholder die, the trust does not dissolve nor does a transfer of shares effect continuity of operations. Finally, shareholders are shielded from liability in matters relating to the trust.

Under the general law, this organizational arrangement constitutes a business trust. A business trust:

"is a form of business organization consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates issued by the trustees, showing the shares into which the beneficial interest in the property is divided. These certificates, which resemble certificates for shares of stock in a corporation and are issued and transferred in like manner, entitle the holders to share ratably in the income of the property, and, upon termination of the trust, in the proceeds." (footnote omitted). Hecht v. Malley, 265 U.S. 144, 146-147, 44 S.Ct. 462, 68 L. Ed. 949 (1924); National City Bank v. Fidelco Growth Inv., 446 F. Supp. 124 (1978). In a business trust the object is not to hold and conserve particular property with incidental powers, as in a conventional trust, but to provide a means for conducting a business for a profit. See Morrissey v. Commissioner, 296 U.S.

344, 56 S.Ct. 289, 80 L.Ed. 263 (1935); National City Bank v. Fidelco Growth, Inc., supra. While the business trust is in many respects similar to a corporation, and often used as a substitute for incorporation, in other respects it partakes of the nature of a partnership. 16 A.W. Fletcher, Cyclopedia of the Law of Private Corporations, §8299, at 548-49 (1962). It is inconceivable that a business organization can obtain all the attributes reserved for a corporation by a mere declaration of trust and without incorporating. It is also inconceivable that persons who have legal title to the assets of a business for gain and who have unfettered authority over the business operations and the employers can by simple device of a declaration of trust insulate themselves from liability and frustrate or supercede the extant law of agency and respondeat superior. While they can agree to limit liability inter sese they cannot effect the claims of third parties or unilaterally shield themselves from their claims.

The respondents concede that since UMET was fathered by a declaration of trust under the laws of California, it is the law of that state that defines its legal characteristics and the relationships between its members and third parties. See Hemphill v. Orloff, 277 U.S. 537 (1928); Lepsch v. Barrett, 236 Pa. 579, 85 Atl. 21 (1912).

Goldwater v. Oltman, 210 Cal. 408, 292 P.2d 624 (1930) is the leading California case which considers the nature of a venture such as the one here described. We quote extensively from that decision as we find that it is pertinent and dispositive:

"Such a trust is brought into being by Declaration of Trust, by the terms of which those desiring to invest their capital agree to the creation of a governing group of trustees, the powers and duties of this Board being dependent on the Trust Agreement.

The interest of each subscriber is evidenced by the transferable certificates, similar to shares of stock in a corporation . . . . The organization does not dissolve as does a partnership upon the transfer of any share, nor upon the death, insanity or bankruptcy of the subscriber. The Trust Agreement usually provides that the trustees and not the subscribers are the owners of the property, and the trustees are given, in a true Massachusetts Trust, complete control of the management of the business. In the Trust Agreement it is always provided that the subscribers are not personally liable for any of the acts of the trustees. . . .

"Generally stated, a trust of this nature is created wherever several persons transfer the legal title in property to trustees, with complete power of management in such trustees free from the control of the creators of the trust, and the trustees in their discretion pay over the profits of the enterprise to the creators of the trust, or their successors in interest. As thus defined it is apparent that such a trust is created by the act of the parties, and does not depend on statutory law for its validity." Id. at page 416. To same effect, see Engineer Service Corp. v. Longridge Investment Co., 314 P.2d 563, 153 Ca.2d. 404 (1957).

As we have intimated earlier the liability is not the test of jurisdiction; it is the activity *directly or by an agent that legitimizes the right of a state to exercise jurisdiction over the absent nonresident principal.* (Emphasis supplied.) See Vespe Contracting Co. v. Anvan Corp., supra; B.J. McAdams, Inc. v. Boggs, supra; Witt v. Scully, supra. It is the activity imputed—the making of the contract, the breach and/or the tortious conduct—that gives to the forum state jurisdiction over the nonresident trustees. Essentially, it is defendants' argument that for various

purposes the courts have equated unincorporated real estate trusts of the nature of UMET as corporations recognizing the separateness of the trustees and the entity. Penna. Co., etc. v. Wallace, et al., 346 Pa. 532, 31 A.2d 71, 156 ALR (1943), 156 ALR 30, see also, Pa. R.C.P. 2126, 2127 and that the parallel should be carried over when considering jurisdiction.

That the parallel does not apply, however, is clear. It is one thing to examine the nature of business enterprises for tax purposes or for purposes of suing and being sued,[3] and wholly another when the purpose is jurisdiction over the person of a nonresident. In the absence of a statutory or constitutional bar, there could be no valid reason why a state could not treat a business trust like a corporation to subserve a particular state interest. Penna. Co., etc.. v. Wallace, et al, supra, 346 Pa. at 546; 9 Am. Jurisprudence, at p. 296. For the state to treat a business trust like a corporation would not only serve a state interest, it would mean that the state could never exercise jurisdiction over a nonresident business person or nonresident enity unless that person or entity had personally performed minimum activity defined in International Shoe Co. v. Washington, supra. Section 5322 of the Judicial Code sanctioning jurisdiction over those who act as their surrogates would be rendered nugatory, an absurdity which we cannot subscribe to.

Our decision that nonresidents who are members of an unincorporated entity are made subject to the jurisdiction of a foreign forum by acts of the business agents, while members of a corporation are not, is underscored by decisions determining jurisdiction in diversity cases. Where the exercise of ju-

---

3. Pa. R.C.P. 2126.

risdiction depends on diversity the federal courts have made similar distinction between corporations and unincorporated entities; an unincorporated entity and a business trust, unlike a corporation which takes citizenship from the state which creates them, are deemed to take the citizenship of its members or trustees. See General Heat & Power v. Diversified Mortgage Investors, 552 F.2d 556 (3rd Cir. 1977). See also, Larwin Mortgage Inv. v. Riverdrive Mall, Inc., et al., 392 F.Supp. 97 (1975). While not determinative, the parallel treatment is informative. For purpose of jurisdiction over the person for acts of the agent, the corporation insulates its members, the unincorporated entity does not.

There is both constitutional basis and statutory basis for the exercise of personal jurisdiction over the trustees. Unlike a corporation, the organizational set up of a business trust does not put the individual trustee out of reach of the long arm statute. Accordingly, we enter the following

## RULE

And now, this April 24, 1980, the preliminary objections of trustees, individual defendants, challenging jurisdiction, are dismissed; this ruling will become final 15 days after date hereof, unless prior thereto an appeal has been taken.